Good morning. My name is Joseph Vodnoy. I'm appearing on behalf of Petitioner Mr. Bateman. I would request two minutes. Hopefully you saved the best for last. We have no control over this case. But that may be subject to debate. There are two issues in the case, the first issue being the fact that my client was deprived of his constitutional rights by ineffective assistance of counsel. And I know that's always raised every time you lose. Somebody says the — We're looking at ineffective assistance of appellate counsel, correct? Yes. And the fact that the issue of the not presenting to the Court the issue with respect to the voluntary manslaughter was, I think, crucial because in a situation in which you have 50 people who appear to be gangbangers approaching you, I think that that is the heat of the passion and that is appropriate for the imperfect self-defense. And it seems to me that it's very similar to the Braverman case which we cited, which shows that somebody who was — a mob was outside the house and he shot through the house. And in that case, it's interesting that they did give the imperfect self-defense instruction, but they did not give the heat of the passion. The Court said that that was error. Counsel, to have given that instruction here, though, would have been contrary to Mr. Bateman's theory of the case. His theory of the case was, I didn't have a gun, I didn't shoot. And if the trial court had undertaken sua sponte, to instruct the jury that they could find something lesser, that would be — that would undo, effectively, the defense of the — for the defendant, wouldn't it? Well, it would. But the problem is this. First of all, the counsel did not discuss with his client this alternative approach. The question of the — but that's — now, that's not your argument. Your argument is that appellate counsel failed. That's true. So if you're arguing that counsel failed to counsel his client correctly as to — as to alternative strategies for trial, that's not before us today. No, I understand that. But, I mean, the problem is that if he — the Barton case and other cases hold, in the Barton case, there was — he said he just accidentally shot somebody. You can't take it in the — in a position that's different than what the instruction is. And my — This wouldn't just be different. This would be — this would be absolutely contradictory to the defense counsel's strategy, their theory of the case. Well — To say it would have been heat of passion or self-defense or a negligent shooting would have been — would have undone, in some respects, in other words, this would be the court undoing the defense's theory, which was, I didn't shoot the gun. I didn't have the gun in my hand. I understand that. But on the other side of the coin, I think he was entitled to look at the evidence of what appeared to be 50 people — That's the way I read Braverman. Exactly. Right. I mean, I think that's correct. But the question under Braverman is, is there's — you know, the district — the trial court judge still doesn't have to give the lesser-included instructions if there isn't evidence. That's true. Before them. So here, you started off by saying there was — that he should have given evidence — he should have given the lesser-included on voluntary manslaughter. Exactly. Because — One of two theories, either heat of passion or imperfect self-defense. But there's very little — you know, there is virtually — you really have to stretch to find evidence that supports either one of those theories of voluntary manslaughter. Well, I mean, I thought — So when you look at — when you look at that, and then you ask whether or not the state court — the court of appeals' determination on habeas, that counsel was not ineffective under these facts for not raising that issue before the court of appeals, it becomes pretty hard to say under the AEDPA standard of review that there was an unreasonable application of the appellate counsel standard for review. And that's difficult. Well, I don't — I understand — I think I understand your theory and where you're going, but — Yeah. And the point — the point being that it seems to me that when you have evidence such as 50 people coming at you who appear to be gangbangers, who had cut in line earlier and there were disputes, this would seem to me to be evidence that would meet the criteria of imperfect self-defense and — and the reason — and also for me, I don't think it would meet the criteria of imperfect self-defense in an executive fashion because — But, counsel, that's an — that's an argument that trial counsel chose the wrong strategy and that trial counsel was ineffective, but that's not your argument. Well, no, that is not my argument, because the appellate counsel should have raised the issue which we're raising. If the appellate counsel should have raised the issue because it was obvious that the district court failed or the trial court failed to correspond to a given instruction, then isn't that an argument that the trial court committed plain error and the counsel below was also — was also ineffective by failing to point this out? Well, he may have been, but appellate court was the same counsel, by the way, as the trial counsel and the appellate counsel, and it is our position that to preserve the — ourselves a here, that we have to do it in terms of an appellate counsel not doing the right thing. And there is also a due process argument we're making here. The point being that, you know, for malice — for malice, for murder, you have an incomplete definition unless you put involuntary manslaughter. The jury is — does not have the right criteria to use if they don't have the fact that an imperfect self-defense or the other would — would reduce it to — to manslaughter. The other argument we're making here with respect to the — the Frye case we're asking the Court to adopt, I appreciate the fact that the Supreme Court has taken the — the — the Baskin v. Boyer case, and just argued it, apparently, a few weeks ago, so that we haven't got a decision on that. But I think that it's clear that the Colorado Supreme Court has — we are analogizing to the California — Colorado Supreme Court in suggesting that it's the same situation in California. When you have a preliminary hearing, you're only going for probable cause. They're not making a credibility theory. That's a — that's the issue I'm very interested in, is was the — was the cross-examination at the preliminary hearing in this case curtailed in any way by the nature of it going to probable cause? Well, we — we feel it was, because the Court does — first of all, does not make credibility determinations at a preliminary hearing, one of the issues, and — which is one of the issues that was raised in Florida. So Anton would not have been necessarily — I mean, was he — was the same incentive, say, to impeach the credibility of Anton exist at the preliminary hearing as it would at the trial? Well, presumably it always will be, but the bottom line is when you're doing a preliminary hearing, all you're trying to attack is probable cause, which is a very low standard. I've heard it a thousand times. Every time you do a preliminary hearing, the counsel say, well, this is a very thin case, or this is practically nonexistent, but we only have a low threshold, and therefore we're holding to answer on the issue of probable cause. And I think that clearly the Frye analysis, which is we're simply going to make a — in effect a bright line that you cannot use a preliminary hearing transcript at a trial, period, I think is the best analysis. So you would be — okay. So you would be asking us to do a new rule? Would that — I mean, if you wanted to adopt a rule like that, would that be a new rule that we could apply to this case or could not apply to this case? No, it's not a new rule, because we argued about a question of cross-examination at preliminary hearings. It's just a question of what criteria you want to use in terms of allowing — Was a specific challenge raised below in the district court? The — on the Frye case? Well, it was raised below on the question of just the issue of whether you could cross-examine — whether he had a full right of cross-examination. But did you — did you mount an attack on the whole preliminary hearing structure or system? No. I don't believe it was. I mean, I believe it was in the lower court. I mean, your argument is that this — at this particular preliminary hearing, this particular preliminary, he didn't get an adequate opportunity to fully cross-examine. Right. That's right. And — And can you be specific? Like, what — what didn't he get to do at this preliminary hearing that, had he had Anton as a witness at trial, he would have been able to do? Well, first of all, one of the issues that we're trying to raise is the fact that it's not so much what he would do as you're entitled on the pointer and so on to have the jury look at the witness and evaluate his credibility. You don't have that when you're using a preliminary hearing transcript. Right. But the Supreme Court in Crawford said you could use a preliminary hearing transcript if that — assuming it was an adequate opportunity to cross-examine, and if the witness is unavailable. So that's the law we're dealing with. Yes. So we already know that there's some circumstances where the jury isn't going to be able to assess the demeanor of the witness. Right. But when you're only going for probable cause, you don't have a chance to — to have your complete presentation of cross-examination. Whatever happened to Anton? Did he ever show up? We haven't heard from him, no. And my client got 83 years, and that's a lot of time. So, I mean, what do we know about Anton? Is he alive? Is he still available as a witness? We have no information about him. He's never — that I know, we have not heard anything about him. And one of the issues we raise, of course, is the fact that they, you know, announced that they're there to arrest him, you know, instead of just coming there and — And that his absence, his unavailability wasn't an innocent unavailability, that the police caused it. Yes. I'd like to save a little bit of time. All right. Thank you, counsel. Good morning. May it please the Court, Deputy Attorney General Roberta Davis for Respondent. As the District Court found, Petitioner is not entitled to habeas relief because the both claims was neither contrary to, nor an unreasonable application of Strickland, Crawford, or any other controlling federal law. As to Petitioner's ineffective assistance of counsel claim, it fails for two main reasons, which are both actually interrelated. And they both deal with the fact that Petitioner has failed to show that he had a reasonable probability of success on his instructional claim in the state courts. First, the state courts actually rejected the ineffective assistance of counsel claim on habeas, specifically saying that they did not see a reasonable probability of success. If the state courts themselves did not see a reasonable probability of success, then I don't see how Petitioner can now argue that he actually did have a reasonable probability of success before those courts. And second, if you actually look at the claim, it does actually lack merit, the instructional claim. As you pointed out yourself, Judge, there is practically no evidence, if any at all, of manslaughter here. And under California law, a manslaughter instruction is only necessary if the issue has been raised. As to the Confrontation Clause claim, this claim also should be denied. There was no evidence that the group of Petitioner's group of friends, that they were friends of Petitioner's group, had a gun or anything like that. Correct. Robinson's testimony, which is the only testimony upon which Petitioner relies, specifically, Robinson testified that he didn't see the group with any weapons. He never testified that Petitioner was panicked or spoke, indicated any kind of belief that the other people had some weapons or were creating some sort of danger. In Barton, which is one of the State cases that Petitioner relies on, first of all, the defense was not misidentification. The defense was that he accidentally shot the victim. And second of all, during that altercation that occurred in Barton, the defendant actually said something like, I think I see a knife. I think the victim has a knife.  There was no evidence here of that. So there was insufficient evidence to require an instruction on manslaughter here. Well, you could presume that, I mean, one could infer, if you were a trial court judge, that by running from the group, that he was in fear. However, Robinson also testified that they did run away, but that they stopped. They distanced themselves. They stopped. There was a moment where Robinson, and I can't remember, there was another person there, and Petitioner actually spoke. They passed the gun around. Petitioner took the gun, then turned and shot into the group. So, again, the standard is whether Petitioner has shown a reasonable probability of success on the instructional claim in the State courts. And do we know if the Petitioner exchanged heated words with any of the members of the other group? There was no evidence of that. In fact, the majority of the evidence indicated otherwise. And Petitioner's own defense was that he was not involved in any kind of altercation with the other group. And so, this Court should find that the State court's rejection of the claim was reasonable. Moving on to the Confrontation Clause claim, this claim also fails for two reasons. First, the State courts reasonably found that the prosecution made a reasonable good faith effort to locate Robinson for trial. And the arrest attempt cannot be the cause of Robinson's absence. As the district court cited U.S. v. Verduzco-Masias, which states, the government did not itself take action which would remove the witness from the subpoena power of the court. It was Robinson's flight and not the actual attempt to arrest him that made him unavailable. And the prosecution had made numerous attempts to prepare him at trial. And to answer your question, Your Honor, I also don't know. Well, the odd, it's very odd that, I mean, I think the police coming to arrest him on something else actually did trigger his running. I think that's correct from the record. But it's very odd that in the ensuing two weeks, the mother was talking to him on the phone, yet she takes the position she didn't know where he was. Actually, she testified that he had called her, I believe, only once, possibly twice, and that he was not telling her where he was. So she had no way to contact him, which was the whole reason why he was, again, unavailable. The prosecution tried to contact him through his mother, but there simply was no way for her to contact him. And the way that they left it, the way that the trial court left it, was that both parties would make further efforts to locate him and procure his presence at trial. Was this tape of the telephone conversation between Melissa Robinson and Mr. Bateman in evidence at the trial? I believe so, yes. OK, because what appears in this tape, I mean, let's just take away Edford's standard and everything. But Bateman is saying over and over and over, I didn't do it, I didn't do it, I knew who did it. It's pretty clear he's making the implication that it was Anton who did it to Anton's mother. Actually, my reading of it, first of all, Erin, I don't believe that that tape is before the court or the sufficiency of the evidence. No, no, I know that. I know. I said, put aside Edpa or whatever. I mean, I think I think what really troubles me about this case is that is the centrality of Anton's testimony at the trial and the fact that all we had was a preliminary hearing, which may or may not have been adequate to as a cross. And then Anton not being at the trial, but his preliminary hearing testimony being used to, you know, to settle the central issue. Was it Anton or was it Bateman who shot the gun? And so, you know, the question under Crawford, assuming it's retroactive, is the preliminary hearing cross-examination adequate to get to that key fact of, which was from the basis for Mr. Bateman's conviction? Well, the way that the Supreme Court law stands as of now is that the defendant does not need to be provided or does not need to actually conduct a cross-examination to the extent that they would like. It doesn't need to be a perfect extensive cross-examination. All that the confrontation clause requires is that they be provided, that the defendant be provided the opportunity for an effective cross-examination. Right. But so what does that mean? Have we had any elucidation of what effective cross-examination means? No. And in fact, the Supreme Court has stated that they have. There is not a standard at this point. So if at the preliminary hearing all Mr. Deitch had asked was, you know, were you there and did you witness the events and sat down, would you be making the same argument that there's no Crawford violation? I think in that case, I still would make the argument that the defendant was provided the opportunity for effective cross-examination. And the fact that the defendant did not take advantage of that opportunity California, you know, California has greatly restricted the whole purposes of a preliminary hearing. Well, first round, I was like, you know, one time you may not remember this, maybe way too many years ago, but you may remember the McMartin preliminary hearing that went nine months and there was extensive cross-examination of every witness that testified in that case. And after that California law changed to make it crystal clear that a witness is a probable cause and that, you know, an officer could testify as to what somebody else had to say, you know, it greatly changed the findings. But first, as I explained to you... But, you know, what concerns me is I'm not sure that this issue was properly raised either before the state court or before the district court. I agree, Your Honor, and that was exactly the point I was going to make. As I explained in my brief, the particular claim that the rules, the California rules of court or rules for preliminary hearings are placed too much of a limit on cross-examination has not been raised in the court below. It's raised for the first time on appeal. And so this court should not reach that issue. And again, the way that the law stands now, as long as the defendant is provided an opportunity for effective cross-examination, then the confrontation clause guarantees have been met. That occurred in this case. Not only was defendant provided an opportunity for effective cross-examination, but I would argue that he did effectively cross-examine Robinson in this case. The same counsel, it was the same counsel and the same theory of defense at that point, defense counsel cross-examined Robinson, he re-cross-examined Robinson. There were no limitations placed by the court during the cross-examinations. And he did actually elicit numerous factors in Robinson's testimony, where Robinson admitted that he didn't remember very significant details that you would expect a witness to remember. So I see I'm running out of time. So in conclusion, I just remind the court that the standard here is whether or not the state courts reasonably applied federal law. And as the federal law stands now, the state courts reasonably rejected petitioner's claims. And so the district court's denial of habeas relief should be affirmed. All right, thank you, counsel. Thank you. Did you raise the issue of the restricted nature of the California preliminary hearing cross-examination below or to the California Supreme Courts? We did in the appeal. As Judge Paez points out, Prop 115 now, you could have an entire trial last 10, 15 minutes. Preliminary hearing. I mean, preliminary hearing last 10 or 15 minutes with an officer coming and saying the victim said this, the victim said that, and the other thing, and you really can't cross-examine at all about it. But the victim, you can't really cross-examine what the victim said. I'd have a murder. Yeah. But, I mean, the point I was trying to make is that if you have a 50, what appears to be gangbangers chasing you, and that is the testimony in this case, that seems to me that's more than enough evidence that this is a situation in which someone is in perfect self-defense and as well as a proper for a voluntary murder, manslaughter, and it is clear. Let me ask you, was there time for reflection? I don't, well, it seemed like they were advancing on it. Based on the record. I don't. They came to a stop. They came to a stop and they were able to pass the gun around. But it wasn't really developed as to whether the 50 people were continuing to jump towards them or not. That was not developed on cross-examination. Well, but, you know, we're stuck with what the record is. I understand, but one of the judge warlords is asking, was there less than adequate cross-examination, and that was not developed as to whether the – in other words, none of the issues about voluntary manslaughter was developed at this cross-examination. Thank you very much. All right. Thank you, counsel. The case of Bateman v. McGrath will be submitted in this session of the Court, will be adjourned for the day. All rise. This court for this session stands adjourned.
judges: Wardlaw, Paez, Bybee